**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:     KEVIN C. MEAKIM, | : | Chapter 7 |
| | : | |
| Debtor. | : | Bky. No. 12-14408 JKF |
| | : | |
| | : | |
| MARSHALL J. KATZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 12-0500 ELF |
| KEVIN C. MEAKIM, | : | |
| | : | |
| Defendant. | : | |

# O R D E R

   **AND NOW, WHEREAS**:

A. Debtor Kevin C. Meakim ("the Debtor") filed a voluntary petition under chapter 7 in this court on May 2, 2012.

B. On July 24, 2012, Plaintiff Marshall J. Katz ("Katz") filed an adversary complaint against the Debtor, seeking a determination that his claims against the Debtor are nondischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(6).

C. On July 30, 2012, the Hon. Jean K. FitzSimon, the judge presiding over the Debtor's bankruptcy case, entered an order reassigning the adversary proceeding to the undersigned judge. (Adv. No. 12-0500, Doc. # 4).

D. On October 1, 2012, Katz filed a motion for summary judgment ("the Motion"), to which the Debtor responded. (Adv. No. 12-0500, Doc. #'s 11, 16, 17, 20).

\*       \*       \*       \*

E.  In September 2007, Katz filed an action ("the State Court Action") against the Debtor and other defendants in the Circuit Court, Cook County, Illinois ("the State Court").

F.  The other named defendants in the State Court Action were: Joseph Grasso ("Grasso"), Nicholas J. Bayer ("Bayer"), Robert D. Carroll ("Carroll"), Walnut Street Capital, LLC ("WSC"), Saxby's Coffee, Inc. ("SCI"), Saxby's Coffee Worldwide, LLC ("SCW"), and Coffee Shops International, LLC ("CSI").

G.  In his amended complaint in the State Court Action, Katz asserted claims against the Debtor for tortious interference with contract, procuring breach of fiduciary duty, fraudulent transfer and unjust enrichment.

H.  Generally, Katz alleged that the defendants, individually and in concert with each other, engaged in an improper course of conduct that was designed to transfer SCI's assets to one or more of the entity-defendants without payment of fair consideration, thereby stripping SCI of its substantial value, to the financial detriment of Katz in his capacities as both a creditor and a shareholder of SCI.

I.  On June 2, 2009, the State Court entered an order of default against Bayer and SCI.

J.  On August 5, 2009, SCW filed a chapter 11 bankruptcy case in this court. The bankruptcy filing stayed the State Court Action against SCW and no default was entered against that entity.

K.  On October 16, 2009, the State Court entered an order of default against CSI.

L.  On November 12, 2009, the State Court entered an order of default against the Debtor, Grasso,

Carroll and WSC.[1]

M. On December 4, 2009, the bankruptcy court issued a preliminary injunction, which, inter alia, restrained Katz from further prosecuting the State Court Action against the Debtor (among others). (See Adv. No. 09-340, Doc. # 27).

N. On October 27, 2010, the bankruptcy court dissolved the preliminary injunction. (Id., Doc. # 96).

---

[1] In a Memorandum Opinion issued in November 2010, the State Court explained the basis for the entry of the default against the Debtor as follows:

> On April 15, 2009 counsel for defendants was given leave to withdraw. Defendants were given until May 6, 2009 to appear individually or through counsel and the case was continued for status to May 14, 2009. On May 14, 2009 new counsel appeared for defendants and the case was continued to June 2, 2009. . . . **On October 16, 2009 . . . [a]ttorneys for Defendants Meakim, Grasso, Carroll, SCW and WSC moved and were given leave to withdraw**. The case was continued to November 6, 2009 for defendants to appear personally or through counsel. **On November 12, 2009 . . . [d]ue to their failure to appear personally or through counsel, default was entered in favor of Katz and against Grasso, Meakim and Carroll** on counts III, V, VI and VII of the amended complaint and against WSC on counts I, II, III, VI and VII of the amended complaint. The case was continued to November 16, 2009 for prove-up.

(State Court Memorandum Opinion dated Nov. 3, 2010) (Motion, Ex. 1) (emphasis added).

The State Court subsequently described the default as having been entered as a sanction, rather than for the mere failure to appear: "[T]he default was entered due to [the] principals' case-long history of frustrating orderly litigation." (State Court Final Judgment Order dated Feb. 16, 2012) ("the Feb. 16th Judgment") (Motion, Ex. 1).

The later description undoubtedly is more precise. This was not a traditional default judgment for the simple failure to file a timely response to a complaint. Indeed, the Debtor filed a response to the original complaint. (See Katz Reply Br., Ex. D.). Given the Debtor's obvious intention to defend the action (as evidenced by his filing a response to the original Complaint), it is likely that the State Court would have granted the Debtor some leeway (perhaps treating the original response as a response to the Amended Complaint), rather than entering a default, if the Debtor were an "ordinary" pro se party. It is clear that the State Court entered the default because the Debtor's failure to file a response to the Amended Complaint as "the last straw" in what it perceived to be an ongoing series of dilatory tactics by the defendants (including the Debtor).

O. On November 10, 2010, after conducting a prove-up hearing, the State Court entered a judgment in favor of Katz and against SCI, CSI, WSC and Carroll in the amount of $23,887,032.63 ("the Nov. 10th Judgment").[2] (See Feb. 16th Judgment).

P. Carroll and CSI both appealed the Nov. 10th Judgment.

Q. The State Court scheduled a prove-up hearing for February 7, 2012 to consider the entry of a money judgment in connection with the default previously entered against the Debtor, Grasso and Bayer.

R. On the day before the hearing, Grasso and Bayer each filed a personal bankruptcy case in this district, thereby staying the prove-up hearing as to them. (See Bky. Nos. 12-11063, 12-11083).[3]

S. The February 7, 2012 prove-up hearing proceeded as to the Debtor. The Debtor, Carroll and Katz testified at the hearing.

T. On February 16, 2012, the State Court issued the Feb. 16th Judgment, in which it incorporated its prior Memorandum Opinion of November 3, 2010 and found the Debtor liable for

    (1) $528,179.63 in compensatory damages for tortious interference with contract and unjust enrichment;

    (2) $5.4 million in compensatory damages for procuring breach of fiduciary duty, fraudulent transfer and unjust enrichment;

    (3) $17,784,538.89 for punitive damages.

---

[2] The State Court subsequently reduced the amount of the Nov. 10th Judgment to $23,811,358.52.

[3] Katz has filed adversary proceedings against both Grasso and Bayer seeking nondischargeability determinations against them. (Adv. Nos. 12-0392, 12-0393).

U.  The Debtor appealed the Feb. 16th Judgment before filing his bankruptcy case on May 2, 2012. (Katz Br. at 11).

V.  The Debtor's appeal of the Feb. 16th Judgment is pending.[4]

    \*    \*    \*    \*

W.  In support of the Motion, Katz has submitted the following evidence:

 (1) the Final Judgment Order;

 (2) the Amended Complaint in the State Court Action; and

 (3) the transcript of a hearing on September 7, 2012, before the Hon. Magdeline D. Coleman, in the Grasso bankruptcy case, Bky. No. 12-11063.

X.  In response, the Debtor has submitted the following evidence:

 (1) the transcript of this court's bench opinion on August 20, 2010, in the SCW bankruptcy case, Bky. No. 09-15898;

 (2) an affidavit from the Debtor in which he:

  (a) denies his liability to Katz;

  (b) asserts that he did not respond to the Amended Complaint in the State Court Action in 2009 due to a lack of resources; and

  (c) asserts that the State Court prohibited him from presenting relevant evidence at the prove-up hearing.

---

[4] The summary judgment record is not explicit on this point, but given the short period of time between the entry of the Feb. 16th Judgment and the May 2, 2012 commencement of the Debtor's bankruptcy case, I have assumed that the appeal was not resolved before the commencement of the Debtor's bankruptcy case stayed the appeal. See 11 U.S.C. §362(a). See Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir. 1982) (§362(a) "stays[s] all appeals in proceedings originally brought against the debtor, regardless of whether the debtor is the appellant or appellee") (emphasis in original).

Y.  Relying primarily on the rulings in the State Court Action, Katz asserts that he is entitled to summary judgment based on the application of the doctrine of issue preclusion.[5]

\*        \*        \*        \*

Z.  In this proceeding, the State Court Judgment and findings are entitled to the same preclusive effect in this court as they would receive in the courts of Illinois.  See 28 U.S.C. §1738; Marrese v. Amer. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1562-63 (3d Cir. 1994); In re Azeglio, 422

---

[5]  The doctrine of issue preclusion also is referred to as the doctrine of collateral estoppel. I will use the more modern term, issue preclusion.

Katz posits that he has proved his case through issue preclusion because the elements of the causes of action in which he prevailed in the State Court are consonant with the elements of his nondischargeability cause of action under 11 U.S.C. §523(a)(2) and (a)(6). (Katz Br. at 28-31).  See generally In re Kates, 2012 WL 6584994, at *10 (Bankr. E.D. Pa. 2012) (describing methodology employed by Katz as a "deductive" approach to the application of issue preclusion).

Katz also attached various documents to his Reply Memorandum designed to rebut arguments raised in the Debtor's response to the Motion.  Without setting out all of the details, Katz offered this evidence for the purpose of establishing that:

(1) the Debtor was in privity with other defendants in the State Court Action (an issue that does seems less germane in this adversary proceeding than in the Grasso and Bayer nondischargeability adversary proceedings, see n.3, supra);

(2) the Debtor's assertion that his financial condition contributed to his inability to defend the State Court Action and the entry of the default;

(3) Grasso has been dishonest in his representations to the bankruptcy court (another issue that seems of marginal relevance, at best, in this adversary proceeding); and

(4) the Debtor waived any argument he may have had that the State Court lacked personal jurisdiction over him.

B.R. 490, 493-94 (Bankr. D.N.J. 2010).

AA. Under Illinois law, there are five (5) requirements for the application of issue preclusion:

    (1) the issue decided in the prior proceeding is identical with the one presented in the later proceeding;

    (2) the party against whom preclusion is asserted was a party or in privity with a party to the prior adjudication;

    (3) there was a final judgment on the merits in the prior proceeding;

    (4) the issue must have been actually litigated in the prior proceeding by the party against whom preclusion is sought; and

    (5) a decision on the issue must have been necessary for the judgment in the first proceeding.

Compare Hulbert v. Charles, 938 N.E.2d 507, 512 (Ill. 2010); State Bldg. Venture v. O'Donnell, 950 N.E.2d 1122, 1127 (Ill. 2010); Gumma v. White, 833 N.E.2d 834, 843 (Ill. 2005), with Talarico v. Dunlap, 685 N.E.2d 325, 328 (Ill. 1997).[6]

BB. In light of the pendency of the Debtor's appeal from the State Court's Feb. 16th Judgment, see n.4 & accompanying text, supra, the Feb. 16th Judgment is not a "final order" under the Illinois law of issue preclusion.[7]

---

[6] There is also some indication in the applicable case law that the doctrine of issue preclusion is equitable in nature and that it "must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being [precluded]." Talarico, 685 N.E.2d at 328 (citation omitted); see also Union Planters Bank, N.A. v. Thompson Coburn LLP, 935 N.E.2d 998, 1030-31 (Ill. App. Ct. 5th Dist. 2010).

[7] In Illinois, the concept of "finality" for purposes of issue preclusion means that the trial court's order is no longer subject to review or modification on appeal. See Ballweg v. City of Springfield, 499 N.E.2d 1373, 1375 (Ill. 1986) ("For purposes of applying the doctrine of [issue preclusion], finality requires he potential for appellate review must have been exhausted."); accord In re McVay, 461 B.R. 735 (Bankr. C.D. Ill. 2012) (dictum). It is indisputable that this requirement has not been satisfied. Because the State Court's Feb. 13, 2012 Order is presently on appeal, under Illinois law, it is not a final judgment and not is entitled to preclusive effect.

(continued...)

CC. The courts of Illinois would not apply the doctrine to preclude the Debtor from litigating any issues that were determined adversely to the Debtor in the State Court Action.

DD. Because the Motion's merit is dependent upon the application of issue preclusion, the Motion must be denied.[8]

---

[7](...continued)
Katz argues that I should predict that the Illinois Supreme Court either will retreat from the Ballweg rule or, at a minimum, not apply its black letter finality principles to "cases of sanction-based defaults." (Katz Br. at 13). I am not persuaded.

First, although, as Katz points out, the Ballweg rule has been criticized, see Rogers v. Desiderio, 58 F.3d 299, 301 (7th Cir. 1995); Langone v. Schad, Diamond and Shedden, P.C., 943 N.E.2d 673, 687 (Ill. App. Ct. 1st Dist. 2010); Terry v. Watts Copy Systems, Inc., 768 N.E.2d 789, 798 (Ill. App. Ct. 4th Dist. 2002) (Cook, J., concurring), I see no indication that the Illinois Supreme Court intends to overrule the decision. Notwithstanding the criticism, the Court has continued to state the rule and cite Ballweg with approval in recent decisions. See O'Donnell, 950 N.E.2d at 1127; People v. Hopkins, 922 N.E.2d 1042, 1050-51 (Ill. 2009); In re A.W., 896 N.E.2d 316, 321 (Ill. 2008).

Second, I see no basis in any of the case law for Katz's suggestion that the Illinois Supreme Court would depart from the Ballweg rule in a case involving a "sanction-based default." None of the decisions suggest that in deciding whether a judgment is final for purposes of applying issue preclusion, the courts should draw distinctions based on the nature of the underlying judgment or the procedure that led to its entry. After a notice of appeal has been filed, a judgment is either final or not final for issue preclusion purposes – without regard to the procedural history that preceded its entry. Indeed, applying issue preclusion to a "sanction-based" default would undermine the Ballweg rule of finality, because it would treat as final the very issues that the losing party seeks review on appeal. Here, the Debtor presumably seeks review of the determination that his conduct constituted a litigation abuse, or at least whether it was abusive enough to warrant the exercise of the court's discretion to impose the most extreme sanction available: a default. See generally Martinez v. Pfizer Lab. Div., 576 N.E.2d 311, 320 (Ill. App. Ct. 1st Dist. 1991) (drastic remedy of entry of default judgment or dismissal of action should be imposed only as last resort); Beiermann v. Edwards, 550 N.E.2d 587, 592 (Ill. App. Ct. 2d Dist. 1990) (same). I perceive no reason why a challenge to that type of ruling should be treated differently than any other issue that may be raised on appeal.

The Illinois rule that a judgment on appeal is not final for purposes of issue preclusion probably is the minority view, see Johnson v. Simonton Bldg. Products, Inc., 2011 WL 251435, at *8 n.12 (D. Kan. Jan. 26, 2011), and its merit, from a policy perspective may well be debatable. However, the bankruptcy court's role is simply to ascertain and apply Illinois law.

[8] The parties expended considerable effort thoughtfully briefing the issue whether, in the circumstances of this case, the courts of Illinois would treat the issues determined in the State Court Action as having been "actually litigated" for purposes of the issue preclusion doctrine. See generally In re Docteroff, 133 F.3d 210, 215-16 (3d Cir. 1997) (under federal common law of issue preclusion, party who participates extensively in prior litigation and who obstructs discovery and "deliberately prevents
(continued...)

* * * *

It is therefore **ORDERED** that:

1. The Motion is **DENIED**.

2. A pretrial conference is **SCHEDULED** on **January 17, 2013, at 1:00 p.m., in Bankruptcy Courtroom No. 1, 900 Market Street, Philadelphia, PA**.

3. Counsel for the parties shall confer prior to the pretrial conference to determine whether they can submit a joint proposal regarding discovery and other pretrial deadlines. If they cannot do so, each party shall be prepared to offer proposed deadlines for a pretrial management order.

**Date: January 9, 2013**

**ERIC L. FRANK
U.S. BANKRUPTCY JUDGE**

---

[8](...continued)
resolution of a lawsuit" will be treated as having actually litigated issues determined in the prior proceeding). Katz argued that I should predict that the Illinois Supreme Court would follow Docteroff and consider the default entered by the State Court as a sanction as satisfying the "actually litigated" requirement. The Debtor, of course, argued to the contrary.

To be clear, I find it unnecessary to decide this issue.